

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Russell Leon David, Sr., #240689 ) | CIVIL ACTION NO. 9:10-1976-RBH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Director Jon E. Ozmint, South Carolina ) | |
| Department of Corrections; Dr. Donald R. ) | |
| Sampson; Dr. A. G. Alewine; Nurse K. ) | |
| McCullough, and Nurse S. Sherman, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on December 20, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 21, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

Plaintiff thereafter filed a response opposition to the Defendants' motion on January

- 1 -

7, 2011. Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified complaint[2] that on January 14, 2010 he sent an Inmate Request to the SMU[3] physician for sick call, saying he needed to see someone about his back, legs and hips. Plaintiff alleges he was seen by the Defendants McCullough and Sherman (nurses), who gave them Ibuprofen for pain. Plaintiff alleges that McCullough told him he would see a doctor in a day or two, but by February 8, 2010 he still had not seen a doctor, so he went back to sick call and told "them" he was suffering bad pain in his hips and back, but he could not lay down, and could sleep at night due to the pain.

Plaintiff alleges that he also wrote to Associate Warden "Barkly" on March 8, 2010, who told Plaintiff that he would be seen by the doctors. Plaintiff further alleges that in response to a Request to Staff sent to the head nurse on March 3, 2010, he was told that the doctor would see him. Plaintiff alleges, however, that after forty-five days he had still not been seen by a doctor, and that the nurses would not call the on-call physician. Plaintiff alleges McCullough told him that the only thing she could do was to let the doctor know that he wanted to be seen and that all the nurses

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint as evidence in issuing a recommendation in this case.

[3] Special Management Unit.



did was provide him with Ibuprofen and take his temperature and blood pressure.

Plaintiff alleges that he finally went to see a doctor on April 15, 2010 (the Defendant Sampson). Plaintiff alleges that Dr. Sampson examined him and told him he would order x-rays of his back and neck, and would also get copies of his old x-rays from 1997. Plaintiff alleges that Sampson also put him on medication, which Plaintiff complains did not help with the pain in his back and neck. Plaintiff alleges that when he told this to McCullough, she replied that the doctor had ordered him to have x-rays done, but that there was no further order given to continue Plaintiff's medication. Plaintiff also alleges that on May 6, 2010 he asked McCullough to see if the doctor would give him something for a bowel movement, but that she did not call the doctor.

Plaintiff alleges that he went ninety days without seeing a doctor and getting adequate medical treatment, which violated his constitutional rights. Plaintiff seeks declaratory and/or injunctive relief, as well as monetary damages. See generally, Plaintiff's Verified Complaint.

In support of summary judgment in the case, the Defendant Donald Sampson has submitted an affidavit wherein he attests that he is a licensed medical doctor employed by the South Carolina Department of Corrections (SCDC). Sampson attests that he saw the Plaintiff on two occasions during the time period relevant to the allegations in his complaint: April 15, 2010 and June 15, 2010. Sampson attests that on April 15, 2010 Plaintiff complained of neck and back pain with occasional numbness in his legs and feet, and that he had been experiencing lower back pains since 1994 when he was in a motor vehicle accident. Sampson attests that he performed a thorough examination of the Plaintiff which revealed that he was in no acute distress, had a normal gait, a normal back, he moved all of his extremities well and had pin prick sensation, and had no overt tenderness on palpation. Sampson attests that he diagnosed Plaintiff with a history of chronic neck



and lower back pain and history of degenerative joint disease of the lumbar spine as shown on an x-ray of March 29, 2005, and with being overweight. Sampson attests that his examination revealed the Plaintiff was experiencing a normal aging process of degenerative joint disease which, in addition to the motor vehicle accident of 1994, was causing him to have lower back pain. He encouraged Plaintiff to lose weight, ordered x-rays of his lumbar-sacral spine and cervical spine, and prescribed Salsalate 750 mg. for muscular skeletal pain.

Sampson attests that he saw Plaintiff again on June 15, 2010, where he was again complaining of lower back pain along with bilateral hip pain. Sampson attests that he performed another thorough examination of the Plaintiff, and again found that Plaintiff was in no acute distress, had a normal gait, was able to get on and off the examination table unassisted and without difficulty, that his back had a normal appearance, and he was almost able to touch his toes and was able to squat. Sampson diagnosed Plaintiff with degenerative joint disease causing lower back pain and bilateral hip pain, and noted that he remained overweight. Sampson attests that he ordered x-rays in both hips, encouraged Plaintiff to lose weight, and assigned him to a bottom bunk on a ground floor. Sampson further attests that because Plaintiff advised him that the Salsalate was not relieving his pain to his satisfaction, he prescribed a different medication, Naproxen 500 mg. Sampson attests that in addition to these two visits, Plaintiff had multiple visits to sick call during the relevant time period, where he was examined and assessed by nursing staff, and that from his (Sampson's) review of Plaintiff's medical records he believes to a reasonable degree of medical certainty that these sick call visits were appropriate, and that the assessments performed by the nurses complied with the standard of care.

Sampson further attests that the SCDC records contain radiology reports from x-rays



taken of Plaintiff's lumbar spine, which he reviewed during the course of his treatment of the Plaintiff.  A May 9, 1997 x-ray of Plaintiff's lumbar spine showed that he had degenerative changes of the lumbar spine, and a March 29, 2005 x-ray of his lumbar spine showed that he had some arthritic changes of the lumbar spine, while the April 15, 2010 x-ray of Plaintiff's lumbar spine ordered by Sampson also showed that Plaintiff had degenerative changes of the lumbar spine.  Sampson attests that these findings support his conclusions that Plaintiff suffered from chronic lower back pain, which he could only attempt to manage, not cure, through treatment and prescribing medication.

Sampson attests that, in his opinion to a reasonable degree of medical certainty, Plaintiff did not suffer any injuries or any worsening of his pre-existing conditions as a result of the medical treatment he, or any other SCDC health care providers, provided to the Plaintiff.  To the contrary, Sampson attests that he responded appropriately to Plaintiff's complaints, ordered appropriate treatments and prescribed appropriate medications, that he diligently monitored Plaintiff's condition, and that he ordered appropriate tests, treatments, medications and consultations according to his best professional judgment.  Sampson further attests after review of Plaintiff's SCDC medical records that, to a reasonable degree of medical certainty, SCDC health care providers provided appropriate care to the Plaintiff.  Finally, Sampson attests that, to a reasonable degree of medical certainty, Plaintiff did not suffer any injuries as a result of the medical care and treatment he was provided, and that if he did suffer any injuries, they were minimal.  See generally, Sampson Affidavit.  See also Defendants' Exhibit 1 [SCDC medical records setting forth Plaintiff's medical care]; Exhibit 3 [X-ray and MRI Reports].

The Defendant Karen McCullough has submitted an affidavit wherein she attests that



she is a licensed practical nurse employed by the SCDC, and that she saw Plaintiff in sick call on three occasions during the relevant time period: January 23, 2010, February 27, 2010, and April 10, 2010. McCullough attests that on January 23, 2010 Plaintiff was complaining of back and neck pain, and that he had been experiencing back and neck pain since 1994 when he was in a motor vehicle accident. McCullough attests that she examined Plaintiff and found no swelling, edema, warmth or tenderness of his back, that he was able to get on and off the examination table without difficulty, and was able to turn his head from side to side without difficulty. McCullough attests that she referred Plaintiff to a physician for a review.

On February 27, 2010 Plaintiff again presented to sick call complaining of neck and back pain. On examination McCullough found no swelling, warmth or tenderness of his back, Plaintiff was able to move on and off the examination table without difficulty, and he had no swelling in his legs. McCullough attests that she followed Standing Order #27, which gives instructions for nurses to follow when inmates are complaining of musculoskeletal pain: she gave Plaintiff acetaminophen 325 mg or ibuprofen 400 mg for his complaints. Thereafter, on April 10, 2010, Plaintiff again presented to sick call with complaints of lower back, leg and hip pain, and on examination was found to have no swelling or edema of his back. McCullough attests that Plaintiff was again able to get on and off of the examination table without difficulty. She scheduled him for a physician's appointment on April 15, 2010, and McCullough attests that she has not seen Plaintiff for complaints related to the allegations in this Complaint since April 10, 2010.

McCullough also attests that in her opinion to a reasonable degree of nursing certainty, Plaintiff did not suffer any injuries or any worsening of his pre-existing condition as a result of the nursing treatment she provided, that her nursing services were made readily available



to the Plaintiff, and that she appropriately responded to his complaint according to her best professional judgment. McCullough further attests that pursuant to her review of Plaintiff's SCDC medical records as well as her personal participation in his medical care and treatment, Plaintiff received appropriate care and treatment for his condition that did not constitute any deviation from generally accepted nursing standards in the nursing profession, and that the care, treatment and attention Plaintiff received was properly administered and was the best course of care and treatment for his condition. Further, Plaintiff did not suffer any injuries as a result of the care and treatment she provided, and even if he did suffer any injuries, they were minimal. See generally, McCullough Affidavit.

The Defendant Marie Sherman has provided an affidavit wherein she attests that she is a licensed practical nurse employed by the SCDC during the relevant time period. She saw Plaintiff as a patient in sick call on only one occasion during the relevant time period: May 16, 2010. Sherman attests that on that date Plaintiff was complaining of back and hip pain, and reported that the medication he was taking was not alleviating his pain. Sherman attests that when she examined Plaintiff she found no swelling, warmth or deformities of his back, he was able to get on and off the examination table unassisted, and he ambulated with a steady gait. Sherman attests that she referred Plaintiff to a physician for review, and that she has not seen Plaintiff for complaints relating to this allegation since that date.

Sherman also attests that in her opinion to a reasonable degree of nursing certainty, Plaintiff did not suffer any injuries or any worsening of his pre-existing condition as a result of the nursing treatment she provided, that her nursing services were made readily available to the Plaintiff, and that she appropriately responded to his complaints according to her best professional judgment.



Sherman further attests that to a reasonable degree of nursing certainty the care Plaintiff received was appropriate for his condition, and that his care and treatment was properly administered and was the best course of care and treatment for his condition, that his care and treatment was appropriate, and did not constitute any deviation from the generally accepted nursing standards for the nursing profession. See generally, Sherman Affidavit.

The Defendant Glenn Alewine has submitted an affidavit wherein he attests that he is a licensed medical doctor employed by the SCDC. Alewine attests that he did not have any interactions with the Plaintiff or provide any medical treatment to him during the relevant time period, and notes that Plaintiff does makes any allegations of wrongdoing against him in the body of this complaint. See generally, Alewine Affidavit. The Defendant Jon Ozmint has also provided an affidavit wherein he attests that he is the Director of the SCDC, that he does not generally have any direct involvement with the medical care that is rendered to inmates, nor does he provide medical care to inmates, and that he has not had any personal involvement with, and has no first hand knowledge of, the matters set forth in the complaint. See generally, Ozmint Affidavit.

In response to the Defendants' motion, Plaintiff has submitted over sixty pages of documents. First, he has submitted copies of numerous Requests to Staff Members wherein he complains about back and leg pain. See Plaintiff's Exhibit 1. Plaintiff has also submitted copies of various medical documents, including examination reports, results of MRIs or x-rays, and SCDC Health Services System notes, some of which go back as much as a decade. See generally, Plaintiff's Exhibits 2-4. Finally, Plaintiff has provided copies of his grievances relating to this matter. See Plaintiff's Exhibit 5.



**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

First, Plaintiff makes no allegations against the Defendants Ozmint and Alewine in his complaint, and both of these Defendants have submitted affidavits attesting that they played no role in the events set forth in Plaintiff's complaint. While public officials are subject to monetary damages under § 1983 in their individual capacities, the Defendants correctly note that the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 cases. See Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). Further, even to the extent one or both of



these Defendants could be considered supervisory officials over the other named Defendants, supervisory officials may be held liable in a § 1983 action only for an official policy or custom for which they are responsible and which resulted in illegal action.  See generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)).  Plaintiff has alleged no policy or custom attributable to either Ozmint or Alewine which caused or resulted in the deprivations alleged.  Therefore, even if this case were to proceed against the other named Defendants, Ozmint and Alewine are entitled to dismissal as party Defendants in this case, at least with respect to Plaintiff's claim for monetary damages.  See Adams v. Pate, 445 F.2d 105, 107 n. 2 (7th Cir. 1971)["Where monetary damages, as distinguished from equitable relief, is sought under the provision of the Civil Rights Act the doctrine of respondeat superior does not apply; personal involvement of the defendant is required."].

With respect to the merits of Plaintiff's claim, in order to avoid summary judgment Plaintiff must present sufficient evidence to create a material issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). In deciding this issue, it is important to remember that whether or not Plaintiff was provided with the care he *desired* is immaterial.

- 10 -



Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) [the Constitution "does not guarantee to a prisoner the treatment of his choice."]; see also Brown v. Thompson, 868 F.Supp. 326, 329-330, n. 2 (S.D.Ga. 1994).  Here, the Defendants attest that Plaintiff has been provided appropriate medical care for his complaints.  The Defendants have also submitted substantial medical logs and records showing Plaintiff's long and repeated history of being seen and evaluated by medical personnel for his medical conditions and complaints during the relevant time period.  Indeed, Plaintiff does not even contest that he has been seen and received care for his complaint; rather, Plaintiff is simply dissatisfied with the general medical care he received as well as with the length of time it took to be seen by a physician.

      Mere disagreement between the Plaintiff and the Defendants about the seriousness of his medical complaints or the course of his treatment does not constitute deliberate indifference on the part of any named Defendant.  Lamb v. Maschner, 633 F.Supp. 351, 353 (D.Kan. 1986); Jackson, 846 F.2d at 817 ["Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."]; Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-1189 (11th Cir. 1994)["An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"], overruled in part by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002). While Plaintiff obviously feels strongly about the course of treatment he should have received for his condition or conditions, he is not a doctor, and his lay opinion that his past treatment has been incorrect or that he should have received additional or different treatment than the treatment he was or is being provided is not in and of itself sufficient to create a genuine issue of fact as to whether



he was denied proper medical care. See Scheckells v. Goord, 423 F.supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim].

The Defendants who are licensed medical professionals have submitted affidavits attesting that Plaintiff's care was appropriate and met the proper medical standard of care, and they have also submitted Plaintiff's medical records, which detail the level of care Plaintiff received while in the custody of the South Carolina Department of Corrections for the relevant time period. No deliberate indifference is indicated in any of this evidence. Conversely, although Plaintiff has submitted copies of numerous medical records, none of these records in and of themselves document any deliberate indifference to his medical care, and Plaintiff has presented no opinion or evidence from any medical professional showing that he should have received a different regimen of treatment than he received, or that his failure to receive a different course of treatment or be seen by a physician earlier constitutes deliberate indifference to a serious illness or injury.[4]  House v. New

---

[4] Even if the Court were to find that the evidence was sufficient to create an issue of fact as to whether a named Defendant was *negligent* with respect to their treatment of the Plaintiff (a finding which the undersigned does not make), Plaintiff's claim would still be subject to dismissal, as negligent or incorrect medical treatment is not actionable under § 1983. Estelle, 429 U.S. at 106; see Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); Ruefly v. Landon, 825 F.2d 792, 793-794 (4th Cir. 1987). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. Section 1983 simply does not impose liability for violations of duties of care arising under state law. DeShaney
(continued...)



Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]. See also Estelle, 429 U.S. at 105; Harris v. Thigpen, 941 F.2d 1495, 1505-1507 (11th Cir. 1991); see Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. at 837. Therefore, no constitutional claim relating to medical care sufficient to survive summary judgment has been presented.

## Conclusion

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Such is the case here. Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

---

⁴(...continued)
v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989); Daniels v. Williams, supra [Jailers may owe a special duty of care to those in their custody under state tort law,...but...we reject the contention that the Due Process Clause of the Fourteenth Amendment embraces such a tort law concept]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Paul v. Davis, 424 U.S. 693, 697 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

- 13 -



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 1, 2011
Charleston, South Carolina

- 14 -



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

